IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALFONSO RAMOS-SOTO et al.,<br><br>Defendants. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 2:18-cr-00110-CW<br><br>District Judge Clark Waddoups |

The matter before the court is the result of *James* hearings the court held on May 5, 2021 and October 25, 2021 regarding the admissibility of the co-conspirator statements that the United States proposes to introduce at trial pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence. Defendant Miquel Angel Zuniga-Rodriguez ("Mr. Zuniga-Rodriguez") has moved to exclude the co-conspirator statements (ECF Nos. 91, 188), to which Defendant Alfonso Ramos-Soto ("Mr. Ramos-Soto") has joined (together, "Defendants"). (ECF Nos. 111, 195.) Also before the court is Mr. Zuniga-Rodriguez's motion to sever. (ECF No. 201.)

In the superseding indictment, Mr. Zuniga-Rodriguez and Mr. Ramos-Soto are charged with, *inter alia*, conspiracies to distribute methamphetamine, heroin, and cocaine (Counts 1-3). (ECF No. 71.) Mr. Ramos-Soto is also charged with conspiracy to commit money laundering with co-defendant Erika Guadalupe Ramos-Romero ("Ms. Ramos-Romero") (Count 13). (*Id.*)

Mr. Zuniga-Rodriguez and Mr. Ramos-Soto have pled not guilty to all counts brought against them.  (ECF No. 75.)  All other co-defendants—aside from Jose Corrales-Zuniga ("Mr. Corrales-Zuniga") who is no longer in the country—pled guilty to the following charges in exchange for dismissal of all other charges against them: (1) Manuel Carlon-Heredia ("Mr. Carlon-Heredia") pled guilty to Count 1 conspiracy to distribute methamphetamine and Count 2 conspiracy to distribute heroin (ECF Nos. 212, 228); (2) Modesto Felipe Campos-Zuniga ("Mr. Campos-Zuniga") pled guilty to Count 1 conspiracy to distribute methamphetamine and Count 7 possession of methamphetamine with intent to distribute (ECF Nos. 209, 233); and (3) Ms. Ramos-Romero pled guilty to Count 13 conspiracy to commit money laundering (ECF Nos. 105, 129).

At the *James* hearings, the court heard testimony from DEA Task Force Officer Michael Martinez and DEA Special Agent Christian Mickelsen.  The court also received nine exhibits from the United States and heard argument from counsel concerning the admissibility of the co-conspirator statements the United States intends to introduce at trial.  As explained below, the evidence does not support the existence of a single overarching conspiracy as theorized by the United States, but rather presents two distinct conspiracies which must be treated separately to guard against guilt by association.  As such, Mr. Zuniga-Rodriguez and Mr. Ramos-Soto's multiple conspiracy objections (approximately 89) are granted.  Additionally, Mr. Zuniga-Rodriguez's motion to sever is granted.

## BACKGROUND

The superseding indictment charges Mr. Ramos-Soto, aka *Poncho*, Mr. Zuniga-Rodriguez aka *Miguel,* Mr. Carlon-Heredia, aka *Manuelito*, Mr. Campos-Zuniga, aka *Felipe*, and Mr. Corrales-Zuniga, aka *Gordo* with one count of conspiracy to distribute methamphetamine, one count of

conspiracy to distribute heroin, and one count of conspiracy to distribute cocaine.[1]  (ECF No. 71 at 2-4.)  The United States has charged the above-named defendants as collectively participating in a single drug trafficking conspiracy to distribute methamphetamine, heroin, and cocaine.  In particular, the United States posits that what, at first glance, appear to be two separate conspiracies—i.e., the *Poncho* conspiracy and the *Gordo* conspiracy—are instead two sides of one larger, overarching conspiracy.  The United States theorizes that *Poncho* and *Gordo* worked together for their shared mutual benefit and are linked by their communication, conduct and shared supply source.  (ECF No. 264 at 29-30.)  Under the theory of one larger conspiracy, the United States seeks to admit approximately 420 statements (ECF No. 107-1) obtained from intercepted phone calls, text messages, Whatsapp messages, and undercover operations at trial.  These communications involve the defendants talking to each other, with an undercover agent, or with a known or unknown individual not specifically charged in this case.  To admit the statements of co-conspirators against Mr. Zuniga-Rodriquez and Mr. Ramos-Soto at trial as non-hearsay under Federal Rule of Evidence 801(d)(2)(E), the United States must prove that Defendants together conspired, as part of one scheme, to distribute methamphetamine, heroin, and cocaine as charged in Counts 1, 2, and 3 of the superseding indictment.

Mr. Zuniga-Rodriguez, joined by Mr. Ramos-Soto, contends that the evidence presented does not support a finding of one conspiracy, but rather two distinct conspiracies that existed independently of each other and must be treated separately.  Specifically, Defendants argue that the evidence fails to demonstrate interdependence between the *Poncho* conspiracy and the *Gordo*

---

[1] Mr. Carlon-Heredia aka *Manuelito* was not charged with conspiracy to distribute cocaine.

conspiracy, the absence of which is fatal to the United States' ability to proceed with its theory of the case that Defendants were part of a single overarching conspiracy.  On that basis, Defendants argue that their co-defendants' statements cannot be admitted against them as co-conspirator statements under Fed. R. Evid. 801(d)(2)(E), and safeguards must be implemented to protect against a prejudicial variance[2] from the superseding indictment, such as limiting jury instructions or severing trials.

In response, the United States argues the two sides—the *Poncho* side and the *Gordo* side—are interdependent because their relationship mutually benefited both sides' business operations and "their shared Mexico-based sources of supply . . . .".  (ECF No. 264 at 29-30.) Furthermore, the United States argues that the "Court need not weigh the evidence to determine whether the evidence best supports a finding of one conspiracy or two conspiracies; large conspiracies are nearly always divisible on paper."  (*Id.* at 32; *see also id.* at 29-31.)

## DISCUSSION

Under Fed. R. Evid. 801(d)(2)(E), out-of-court statements made by co-conspirators are non-hearsay and admissible at trial.[3]  Before admitting evidence under this rule, the court must determine, by a preponderance of the evidence, that: (1) a conspiracy existed; (2) the declarant and the defendant were both members of the conspiracy; and (3) the statements were made in the course of and in

---

[2] A prejudicial variance may occur where there is a "transference of guilt to an accused from incriminating evidence presented in connection with the prosecution of another in the same trial for a crime in which the accused did not participate."  *United States v. Morris*, 623 F.2d 145, 149 (10th Cir. 1980).

[3] Fed. R. Evid. 801(d)(2)(E) provides: "A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

furtherance of the conspiracy.[4]  *United States v. Owens,* 70 F.3d 1118, 1123 (10th Cir. 1995); *United States v. Urena,* 27 F.3d 1487, 1490 (10th Cir. 1994).

First, the court must determine that a conspiracy exists. "To prove conspiracy, the [United States] must show: (1) that two or more persons agreed to violate the law, (2) that the defendant knew at least the essential objectives of the conspiracy, (3) that the defendant knowingly and voluntarily became a part of it, and (4) that the alleged coconspirators were interdependent." *United States v. Small,* 423 F.3d 1164, 1182 (10th Cir. 2005) (citing *United States v. Evans*, 970 F.2d 663, 668 (10th Cir. 1992)).  The four elements of conspiracy are defined in turn.

*1.     Agreement*:  To prove an agreement, the government is required to prove that two or more persons agreed to commit the offense.  *Evans*, 970 F.2d at 669.  Here, the essence of the alleged agreement was to distribute methamphetamine, heroin, and cocaine within the Central Division of the District of Utah and elsewhere.  "'[T]he government need not offer direct proof of an express agreement on the part of the defendant.  Instead, the agreement may be informal and may be inferred entirely from circumstantial evidence.'"  *United States v. Pulido-Jacobo*, 377 F.3d 1124, 1129 (10th Cir. 2004) (quoting *United States v. Lang*, 364 F.3d 1210, 1223 (10th Cir. 2004)).

*2.     Knowledge of Conspiracy Objectives*:  "It is necessary to show that the 'defendant shared a common purpose or design with his alleged coconspirators.'"  *Evans*, 970 F.2d at 669 (quoting *United States v. Horn*, 946 F.2d 738, 740 (10th Cir. 1991).  In this case, the objective of the conspiracy was to distribute methamphetamine, heroin, and cocaine in Utah.  "To prove knowledge

---

[4] There are approximately 420 statements offered by the United States in this case. At this time, the court will not discuss each statement in isolation to determine if it was made in furtherance of a conspiracy.  However, the court finds that the recorded calls and communications do support a finding that the calls were in furtherance of the conspiracy.  Defendants may object to a specific statement during trial if they do not believe it was made in furtherance of a conspiracy.

of the essential objectives of a conspiracy, the government does not have to show the defendant knew

all the details or all the members of a conspiracy.  Rather, the government only needs to demonstrate

the defendant shared a common purpose or design with his alleged co-conspirators." *United States v.*

*Yehling*, 456 F.3d 1236, 1240 (10th Cir. 2006).  The objective of the conspiracy becomes especially

important when the government's theory of conspiracy is based on purchases and sales.  *Evans*, 970

F.2d at 669.  "Evidence that an intermediate distributor bought from a supplier might be sufficient to

link that buyer to a conspiracy to distribute drugs because both buyer and seller share the distribution

objective." *Id*.

     *3.*    *Participation*:  "A defendant may be convicted of a conspiracy only if the

government proves that the defendant had knowledge of the conspiracy and voluntarily participated

therein." *Id*.  A conspirator "need not know of the existence or identity of the other members of the

conspiracy or the full extent of the conspiracy," *United States v. Metro. Enter.,* 728 F.2d 444, 451

(10th Cir. 1984) (citing *Blumenthal v. United States,* 332 U.S. 539, 557 (1947)), but he or she must

have a general awareness of both the scope and the objective of the enterprise to be regarded as a co-

conspirator, *Evans*, 970 F.2d at 670.

     *4.*    *Interdependence*:  Interdependence exists when each alleged co-conspirator depends

on the successful operation of the other to achieve the common goal.  *Yehling*, 456 F.3d at 1241.  "In

other words, each coconspirator's 'actions must facilitate the endeavors of other alleged

coconspirators or facilitate the venture as a whole.'" *Id*.  (quoting *Evans*, 970 F.2d at 670).  Thus, a

single conspiracy does not exist solely because many individuals deal with a common central player;

instead, a *shared*, single criminal objective must exist, not just similar or parallel objectives between

similarly situated people.

In this case, the court turns to the question of interdependence and, for purposes of this order, assumes, without deciding, that the United States has sufficiently proven the first three elements of conspiracy. However, as shown below, the United States has failed to present evidence to satisfy the fourth element of conspiracy—interdependence. As such, it has not shown by a preponderance of evidence that Defendants were engaged in the same conspiracy or satisfactorily explained its theory of a larger conspiracy.

## I.   MR. ZUNIGA-RODRIGUEZ AND MR. RAMOS-SOTO WERE NOT MEMBERS OF THE SAME CONSPIRACY

The United States relies on the following evidence to establish interdependence:

1. Mr. Ramos-Soto (*Poncho*) shared drugs with Mr. Corrales-Zuniga (*Gordo*)
2. Mr. Corrales-Zuniga (*Gordo*) shared drugs with Mr. Ramos-Soto (*Poncho*)
3. When Mr. Campos-Zuniga (*Felipe*) asked Mr. Ramos-Soto (*Poncho*) for help moving a vehicle with a firearm, Mr. Ramos-Soto (*Poncho*) sent his runner to help Mr. Campos-Zuniga (*Felipe*)
4. When Mr. Ramos-Soto (*Poncho*) took a trip to Los Angeles, he told his sources of supply he would bring back cocaine for Mr. Corrales-Zuniga (*Gordo*), who wanted it
5. Mr. Ramos-Soto (*Poncho*) let Mr. Corrales-Zuniga (*Gordo*) know when he was leaving town
6. When Mr. Corrales-Zuniga (*Gordo*) correctly identified undercover police officers conducting surveillance on him, he called and warned Mr. Ramos-Soto (*Poncho*)
7. Neither Mr. Ramos-Soto (*Poncho*) nor Mr. Corrales-Zuniga (*Gordo*)/Mr. Zuniga-Rodriquez (*Miguel*) ever attempted to steal away a retail customer from the other.

(ECF No. 264 at 29.) Based on the above evidence, the United States appears to have taken a broad interpretation of "common goal," that being the common goal to possess and distribute heroin, cocaine, and methamphetamine in Utah. Such an interpretation is incorrect. Rather, in practice, common goal is narrowly interpreted in that the evidence must show that the defendants acted together to facilitate their shared venture. *See, e.g.*, *United States v. Fox*, 902 F.2d 1508, 1515 (10th Cir. 1990) (interdependence present and conspiracy conviction proper where a "scheme for distributing cocaine for profit in Denver depended for its success on the successful achievement of

several integrated steps, including regular meetings between [the defendants], the pooling of their resources to purchase drugs, and . . . several wholesale cocaine purchases"); *United States v. McIntyre,* 836 F.2d 467, 472 (10th Cir. 1987) (interdependence not present and conspiracy conviction improper where the defendant was a buyer in several unrelated transactions and the government was unable to show that "if defendant had failed to possess and distribute drugs on any one of the named occasions, the failure would have had any effect on the success of the other transactions.").

In *United States v. Caldwell*, the Tenth Circuit Court of Appeals, spotlights the importance of establishing mutual benefit before proceeding to determine that several drug dealers who interact with one another are involved in a single conspiracy:

> It is not enough that a group of people separately intend to distribute drugs in a single area, nor even that their activities occasionally or sporadically place them in contact with each other. People in the same industry in the same locale (even competitors) can occasionally be expected to interact with each other without thereby becoming coconspirators. What is needed is proof that they intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

589 F.3d 1323, 1330 (10th Cir. 2009) (quoting *Evans,* 970 F.2d at 670-71).

Here, the United States has failed to show any common goal or larger scheme beyond a handful of people distributing drugs in a single area whose illicit activities occasionally place them in contact with each other.  Importantly, there is no evidence that if failure besieged the *Poncho* conspiracy, the failure would have had any effect on the success of the *Gordo* conspiracy or vice versa.

Instead, based upon the evidence heard at the *James* hearings, interdependence is virtually non-existent among the alleged co-conspirators.  Although interdependence is present *within* the

*Poncho* conspiracy and the *Gordo* conspiracy, interdependence is lacking *between* the two—the absence of which is fatal to the United States' single conspiracy approach.  Specifically, there is no evidence that Reyes Carrillo-Solis ("Reyes") or Humberto Ortega ("Cavezon"), the alleged heads of the drug trafficking organizations, told Defendants or the co-conspirators to go to each other when they were running low on drugs.  Nor is there evidence that the co-conspirators referred their customers to other co-conspirators if they happened to be out of drugs or operations were compromised.  Although Defendants may have been aware of the existence of Reyes and Cavezon's operations in general, there is no evidence that the co-conspirators relied on each other for their success and mutual benefit in accomplishing a common objective of distributing drugs.  Nor is there evidence that the two sides shared expenses, profits, or losses in anyway.  Similarly, while *Poncho* and *Gordo*, at times, purchased drugs from the other when their own supply was low, there is no evidence that the two sides "fronted" drugs to co-defendants and/or received a cut or percentage of any money from any of their sales of drugs to others.  *See, e.g., United States v. Small,* 423 F.3d 1164, 1184 (10th Cir. 2005).

In the absence of interdependence, the United States cannot show the Defendants entered into a conspiracy together.  Accordingly, because the first requirement for admission of co-conspirator statements has not been met—i.e., existence of conspiracy—the communications between the *Poncho* conspiracy and the *Gordo* conspiracy cannot be admitted against each other under Rule 801(d)(2)(E).

## II.    TWO DISTINCT CONSPIRACIES

Although the evidence does not support a finding of one larger conspiracy, the evidence

9

does support a finding that two independent conspiracies existed: the *Poncho* conspiracy and the *Gordo* conspiracy. The evidence also shows that Mr. Ramos-Soto was part of the *Poncho* conspiracy and Mr. Zuniga-Rodriguez was part of the *Gordo* conspiracy, associations that neither Mr. Ramos-Soto nor Mr. Zuniga-Rodriguez contest. The two distinct conspiracies are addressed in turn.

    A.  The *Poncho* Conspiracy

    The United States has established by a preponderance of the evidence that Mr. Ramos-Soto was a member of the *Poncho* conspiracy, whose members included Mr. Carlon-Heredia, Ms. Ramos-Romero, Reyes, and Cavezon. The calls between Mr. Ramos-Soto and Reyes clearly show that Reyes was supplying Mr. Ramos-Soto with drugs who was then in turn coordinating the sale of the drugs through Mr. Carlon-Heredia, among others. In addition to supplying and coordinating sales, Mr. Ramos-Soto was integral to the financial operations of the *Poncho* conspiracy as evidenced from the calls discussing collection efforts between Mr. Ramos-Soto and Cavezon and communications arranging for the transfer of illicit funds between Mr. Ramos-Soto and his wife Ms. Ramos-Romero. Additionally, the evidence seized from the search warrants executed at Mr. Ramos-Soto's residence located at 1145 South Navajo Street and the *Poncho* Stash House located at 764 North 900 West #101 on February 7, 2018, demonstrate the nature and extent of their relationships in carrying out the conspiracies' goals.

    B.  The *Gordo* Conspiracy

    The United States has established by a preponderance of the evidence that Mr. Zuniga-Rodriguez, Mr. Campos-Zuniga, Mr. Corrales-Zuniga, and Cavezon were members of the conspiracy referred to as the *Gordo* conspiracy. The phone conversations between Mr. Zuniga-Rodriguez and Mr. Campos-Zuniga and Mr. Corrales-Zuniga and Cavezon and those with the undercover agent, combined with the controlled buys involving Mr. Corrales-Zuniga, Mr. Campos-Zuniga, and Mr.

Zuniga-Rodriguez demonstrated their interactions and joint purpose of dealing illegal substances.  In addition, the evidence seized from the residence of Mr. Corrales-Zuniga (Gordo), Mr. Campos-Zuniga (Felipe), and Mr. Zuniga-Rodriquez (Miguel) located at 1665 West Brampton Way #221, including the Gray Nissa Versa, and the *Gordo* Stash House located at 163 South 1300 East #4 on February 7, 2018, demonstrate the nature and extent of their relationships and reliance upon each other to carry out their assigned roles for the benefit of the overall venture.

## III.   OBJECTIONS TO PROFFERED JAMES STATEMENTS

Mr. Zuniga-Rodriguez raises approximately 132 objections[5] to statements that the United States intends to admit against him.  These objections fall within five categories: Multiple Conspiracies; Pre-Joinder; Context; Furtherance; and Declarant.  Mr. Ramos-Soto joins Mr. Zuniga-Rodriguez's motion and reiterates his generalized arguments under each of these categories but does not attack the admissibility of any specific statements.

### A.   Multiple Conspiracies

Approximately 89 of Defendants' 132 active objections are raised solely on grounds that there are multiple conspiracies.  As shown above, the court finds that two distinct conspiracies existed.  Therefore, Defendants' multiple conspiracies objections are SUSTAINED consistent with the court's reasoning above.

### B.   Pre-Joinder

Mr. Zuniga-Rodriguez objects to the admission of any statement made before he joined the conspiracy.  The United States has proffered that it can establish that Mr. Zuniga-Rodriguez joined

---

[5] While Mr. Zuniga-Rodriguez objected to many more statements, the United States has mooted about half of them by stating that it will not attempt to admit statements against Mr. Zuniga-Rodriguez that were made before he joined the conspiracy.

the conspiracy no later than December 8, 2017 and has agreed that it will not attempt to admit against him any statements that were made before that day.  Based on evidence obtained from the undercover buys, Exhibits 13-15, and the communications between Mr. Zuniga-Rodriguez and Leon Wilson (Statements 220-221, 223-224) the United States has established that Mr. Zuniga-Rodriguez indeed joined the conspiracy no later than December 8, 2017.  Accordingly, with the exception of Statements 302, 303, 318, and 340, all of Mr. Zuniga-Rodriguez's 43 "active"[6] pre-joinder objections are OVERRULED.  Mr. Zuniga-Rodriguez's objections to Statements 302, 303, 318, and 340 are SUSTAINED as these statements were made before December 8, 2017.

C.  Context

Defendants raise 14 "context" objections in which they argue that the United Stated has failed to provide enough context for the statements it intends to admit against them.  They therefore argue that the US has failed to meet its burden of establishing admissibility and that without context, Defendants cannot properly examine the statements.  The United States has responded and provided the requested context for each of Defendants' objections.  Defendants' context objections are therefore MOOT, as failure to provide context at this point is not fatal.  In the event Defendants find the context inadequate, Defendants must individually renew those objections in writing with the court within 45 days from the date of this order, no later than February 4, 2022.  Failure to do so will result in waiver of those objections.

---

[6] *See supra* note 5.

D.  Furtherance

Each of the statements to which Defendants object to on "furtherance" grounds falls within those that the United States has agreed it will not admit against them.  Defendants' furtherance objections are therefore MOOT.

E.  Declarant

Defendants assert 13 "declarant" objections, the basis of which is that the United States has failed to show that the declarant of the statement is a co-conspirator.  The court examines the specific objections to Statement 372 and Statements 384–388 and 414–420 in turn.

1.  *Statement 372*

This statement was made between Mr. Ramos-Soto and Cavezon. There are numerous statements between Cavezon and Mr. Ramos-Soto to which no objection has been made, and there is no dispute that Cavezon is a co-conspirator.  As such, it appears that this statement was erroneously objected to, and therefore is OVERRULED.

2.  *Statements 384–388, 414–420*

Each of these statements were made between Mr. Zuniga-Rodriguez and an Undercover Agent.  The First Circuit Court of Appeals has recognized that "[t]he black-letter principle is that statements made in the course of a discussion between a coconspirator and a third party who is a stranger to the conspiracy are admissible under Rule 801(d)(2)(E), provided that they meet the Rule's foundational requirements.  That is true regardless of whether the third party is a tipster, an informant, an undercover officer, or a mere acquaintance."  *United States v. Piper*, 298 F.3d 47, 53 (1st Cir. 2002).  The Ninth Circuit Court of Appeals has similarly recognized that "[i]t is well established that statements made by a co-conspirator need not be made to a member of the

conspiracy to be admissible under rule 801(d)(2)(E).  *United States v. Zavala-Serra*, 853 F.2d 1512, 1516 (9th Cir. 1988) (citations omitted).

Relying on this principle, the United States argues that these statements are admissible under Rule 801(d)(2)(E).  The United States also argues, in the alternative, that, because the statements are being admitted to give context and completeness to the statements made to him by Mr. Zuniga-Rodriguez, they are, by definition, not hearsay and thus not inadmissible.  *See United States v. Rodriguez*, 509 F.2d 1342, 1348 (5th Cir. 1975) (recognizing that an undercover agent's testimony as to statements he had made to a defendant was not hearsay because "it is doubtful that any of this testimony was used to prove the accuracy of facts asserted extrajudicially.  Rather, the statements were used only to place the replies of the appellant in context").  The court finds both arguments persuasive and, therefore, the objections are OVERRULED.

## IV.    MR. ZUNIGA-RODRIGUEZ'S MOTION TO SEVER

Pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure, a court may "order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires" if joinder "appears to prejudice a defendant."  Fed. R. Crim. P. 14(a).  Rule 14(a) envisions situations where a joint trial would be inappropriate and harmful to the accused's constitutional rights even though joinder is proper under Rule 8, which is liberally and broadly applied in the interest of efficiency.  *See, e.g.*, *Zafiro v. United States*, 506 U.S. 534, 538 (1993) (using rule 14 as the standard for a severance); *United States v. Cox*, 934 F.2d 1114, 1119 (10th Cir. 1991) (applying rule 14 to set the standard for severance).  The decision to sever is "within the sound discretion of the trial court." *Cox*, 934 F.2d at 1119 (citation omitted).  Because the court finds two distinct conspiracies existed, a severance of trials is appropriate in this case—a point that the United States agreed to at the *James* hearings.  Accordingly, Mr. Zuniga-Rodriguez's motion to sever is GRANTED.

## CONCLUSION AND ORDER

For the foregoing reasons, the court finds that the United States has not established by a preponderance of evidence that a one singular overarching conspiracy existed. However, the United States has shown by a preponderance of evidence that two distinct conspiracies existed; Defendant Mr. Zuniga Rodriguez was a member of the *Gordo* conspiracy and Defendant Mr. Ramos-Soto was a member of the *Poncho* conspiracy; and the statements the United States intends to introduce at trial were made in the course and in furtherance of the conspiracy. Accordingly, IT IS HEREBY ORDERED that:

1. The multiple conspiracies objections (approximately 89) are SUSTAINED.

2. Statements made in furtherance of the *Poncho* conspiracy are admissible as co-conspirator statements against Mr. Ramos-Soto pursuant to Fed. R. Evid. 801(d)(2)(E).

3. Statements made in furtherance of the *Gordo* conspiracy are admissible as co-conspirator statements against Mr. Zuniga-Rodriguez pursuant to Fed. R. Evid. 801(d)(2)(E).

4. Mr. Zuniga-Rodriguez's pre-joinder objections are OVERRULED with the exception of Statements 302, 303, 318, and 340. Mr. Zuniga-Rodriguez's objections to Statements 302, 303, 318, and 340 are SUSTAINED as these statements were made before December 8, 2017.

5. Defendants' context objections are MOOT. In the event the context provided by the United States is inadequate, Defendants must individually renew any context objections in writing with the court within 45 days from the date of this order, no later than February 4, 2022. Failure to do so will result in waiver of those objections.

6. Defendants' furtherance objections are MOOT.

7. Defendants' declarant objections are OVERRULED.

8.      Mr. Zuniga-Rodriguez's motion to sever trials is GRANTED.

9.      All remaining objections not addressed herein must be individually renewed in

writing with the court within 45 days from the date of this order, no later than February 4, 2022.

Failure to do so will result in waiver of those objections.

IT IS SO ORDERED.

DATED this 21st day of December, 2021.

BY THE COURT:

_____
Clark Waddoups
United States District Judge